YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* M. Y. BLUM.

[42 South. Rep., 282.]

CARRIERS. *Carriage of goods. Delay. Excuse. Excessive freights.*

> Where a carrier's failure to transport cotton with reasonable dispatch was caused by an excessive crop, it was not liable for the delay, where it took extraordinary measures to be able to move the same, and the shipper knew at the time he offered the shipment that, on account of the heavy trafic and great demand for cars, it could not be transported with the usual rapidity.

FROM the circuit court of Washington county.

HON. A. McC. KIMBROUGH, Judge.

Blum, the appellee, was the plaintiff in the court below; the railroad company, the appellant, was defendant there. From a judgment in favor of plaintiff defendant appealed to the supreme court.

This case is somewhat similar to that of *Yazoo, etc., R. R. Co.* v. *Blum*, 88 Miss., 180 (s.c., 40 South. Rep., 748), but must not be confused with it. Plaintiff sued to recover damages arising from the defendant's failure, after accepting three hundred and forty-two bales of cotton for shipment, to transport and deliver the same with reasonable promptness.

To the declaration defendant pleaded the general issue, and gave notice thereunder, as shown by the opinion of the court. On trial of the case the plaintiff introduced evidence substantiating the allegations of his declaration, and showing ignorance of defendant's lack of facilities to make speedy transportation of the cotton. Defendant offered to prove the truth of the matters of defense set forth in its notice; but the trial court sustained the objection of plaintiff to such evidence, and defendant duly excepted. The jury found for the plaintiff, awarding him $1,348. Other facts are stated in the opinion of the court

*C. N. Burch,* and *Mayes & Longstreet,* for appellant.

This case differs in its facts from that of *Yazoo & Mississippi Valley Railroad Company* v. *Blum Company,* 88 Miss., 180 (s.c., 40 South. Rep., 748). There the case was before the court on declaration and plea thereto and demurrer of plaintiff to the plea, and the court held that the decision rested solely on the circumstances alleged in that particular case. Hence, that decision may be accepted as a correct adjudication under the circumstances there shown, and yet, because of the differences of this case from that on the facts, this one must be determined in favor of the railroad company.

Justice TRULY, in the case above referred to, at the very outset of his opinion calls attention to the statement of the plea that the damage sustained "resulted from the defendant's not being provided with sufficient equipment and facilities for handling of the cotton with greater expedition than was used in handling it." He also refers to the absence from the pleadings of defendant company of an allegation showing that defendant had adequate facilities for its ordinary business. But in this case it is distinctly averred that at the time of the alleged delay the defendant carrier was adequately equipped for the transportation of all business ordinarily offered to it or which, ·in usual course, it was called on to transport, or had reason to expect it would be called on to transport.

In the second place, Judge TRULY, referring to the rule laid down in the *Ragsdale case,* 46 Miss., 478, to the effect that if the carrier have reasonable equipment for ordinary traffic, and the carrying is done with reasonable expedition, the carrier cannot be held liable for delay occasioned by unusual press of business, says that this rule is subject to modification; for mere delay alone, even though apparently unreasonable, will not of itself impose liability upon the carrier.

But the two objections urged by the court in the *Blum Company case,* and shown in Judge TRULY's opinion, cannot be

found here. There is no admission of a lack of proper equipment entirely adequate to all normal conditions of traffic. And the special circumstances to excuse the apparently unreasonable delay, and to show the extraordinary diligence on the carrier's part to provide for the special emergency, are explicitly averred and explained.

It is shown that the appellant had exerted tremendous effort, even more than the law required, to transport all freight which might have been reasonably expected of it under natural conditions, even assuming that there would be a natural increase in the volume of such business. During the months of the cotton season, being the months when the delay occurred, not only did appellant have all of its own cars, including a very large number recently purchased, in service, but it also, at heavy expense to itself, pressed into service cars of foreign companies; it rushed these cars back from destination when emptied, without waiting for them to be reloaded, so that as a result the percentage of its handling empty cars—cars producing no revenue—was very much greater than for any previous year. Moreover, notwithstanding this great increase in equipment was obtained at tremendous cost, it is shown that it was all the equipment that the appellant was possibly able to obtain.

Had there not been a marvelous, world-record cotton crop in 1904, the equipment would have answered every demand made on appellant. The increase in amount of cotton for the season of 1904, as compared with the previous season, was nearly three millions of bales, a very large amount of which was in the rich Delta region of this state traversed by appellant's road.

In *Thayer* v. *Burchard,* 99 Mass., 508, the Massachusetts court declared that if for nine months of the year a carrier's rolling stock is sufficient for its ordinary business, but is insufficient to carry promptly all the freight of a particular section in three months of the year, the fact that there was usually every year an increase in traffic during such three months' period

was of itself sufficient to render the carrier liable for expenses of consignors claimed because of its negligence of equipment. In *Galena Railroad Company* v. *Roe,* 68 Am. Dec., 574, where conditons similar to these were considered by the court, there being a tremendous crop marketed at a special season, the defendant carrier was exonerated from fault on the ground that it was an extraordinary occasion of great public necessity, and the carrier in such instance could only be expected to serve all alike.

But appellee mainly bases his right to recover on the ground that appellant accepted the cotton when tendered, and issued bills of lading therefor, without notifying appellee that the cotton might be delayed; and as a result of such failure it is claimed that appellant cannot deny liability. In the *Blum Company* case Judge TRULY's opinion stated that the carrier accepted shipments and issued bills of lading without advising the shipper of probable delay, although within its own knowledge. But here it is distinctly averred in the notice under the general issue that the shipper was informed that large quantities of cotton were being offered to appellant for shipment and there was great demand for cars, and cotton was not being transported with customary rapidity. Appellee's only contention is based on appellant's failure to inform him that delay was probable. The information given and the knowledge already had by appellee at the time were sufficient to put him on inquiry. A party cannot sit tacitly by with knowledge of important facts and then say he did not know of other facts which any prudent man would have known on inquiry. 21 Am. & Eng. Ency. Law (2d ed.), 584.

While Justice TRULY's opinion recites that nothing can relieve the carrier, after acceptance of freight and delivery of bill of lading therefor, from obligation to make delivery except act of God, conduct of the owner or special agreement, or the public enemy, the meaning of the court, from the reasoning of the *Ragsdale case, supra,* is that under the common law the carrier

is an insurer against loss and damage, but not against delay. Many accidents will excuse delay. The distinction to be borne in mind is between making no delivery and making late delivery. Elliott on Railroads, secs. 1459, 1484; Hale on Bailments and Carriers, 408.

As regards question of notice, upon whom rested the greater duty? On appellant to notify appellee of existing probabilities of delay, or upon appellee, knowing of the great demand for cars and heavy and slow movement of cotton, to make inquiry of appellant as to probabilities of delay? In *Peet* v. *Chicago & Northwestern Railroad Company,* 20 Wis., 594 (s.c., 91 Am. Dec., 446), and in *Texas Central Railroad Co.* v. *Johnson,* 22 Am. & Eng, R. Cas., 428, citing *Wilbert* v. *New York & Erie Railroad Company,* 19 Barb. (N. Y.), 3651, it is held and reiterated that while press of freight will not excuse failure to carry in ordinary times unless notice of necessity of delay is given the shipper, yet if the shipper has all the information he desires as to the causes which may delay the delivery of the goods, it would be more reasonable that he should make inquiry than to impose on the carrier the duty of giving, unasked, a statement of such circumstances.

And see also *Ballentine* v. *Northern Missouri Railroad Company,* 93 Am. Dec., 315; *Helliwell* v. *Grand Railroad Company* (C. C. A.), 7 Fed. Rep., 68, and *Faulkner* v. *Southern Pacific Railroad Company,* 51 Mo., 311.

Hence, as the appellee knew at the time he offered the cotton to appellant that on account of the heavy traffic and great demand for cars it could not be transported with the usual rapidity, and inasmuch as the appellant had taken unusual means to handle the cotton, appellant was not liable for the damage claimed by appellee.

*Shields & Boddie,* for appellee.

This court has held in the case of *Blum Company* v. *Yazoo & Mississippi Valley Railroad Company,* 88 Miss., 180 (s.c., 40

South. Rep., 748), that if a carrier is aware at time of tender of freight to it of probability of delay in handling shipments, yet accepts the freight and issues bills of lading therefor, without advising the shipper of such probability of delay, so that the shipper may be afforded opportunity of selecting some other method of transportation, the carrier thereby assumes liability for damages for its failure or delay in transportation and delivery. This is in accordance with the common law. 5 Am. & Eng. Ency. Law (2d ed.), 160, 167, 169, 256.

The present case falls within Justice TRULY's decision in the above case. Although defendant's pleading avers that plaintiff, Blum, knew when he offered the cotton for shipment that a large amount of cotton was being offered to defendant at the point from which plaintiff's cotton was shipped, and was informed that such was the case all along defendant's railroad line, and knew that because of the great demand for cars the cotton could not be transported with the usual celerity, yet, until plaintiff was notified that the defendant did not have sufficient facilities to transport and deliver the shipment promptly, plaintiff would have the right to assume that defendant could transport and deliver the cotton, while perhaps not so rapidly as usual, still within a reasonable time, no matter how much was offered.

When the appellant accepted the cotton and delivered to appellee its bills of lading therefor, without notifying him that it had insufficient facilities for transporting the same within a reasonable time, it became liable to the appellee as shipper for any loss resulting from its failure to so transport and deliver. Even though the shipper may know that there is a great demand for cars and an unusually large amount of cotton being offered to the carrier for shipment, still he should have the right to assume, unless advised to the contrary, that the carrier, on receiving his cotton, will be able to furnish facilities adequate to move and deliver the cotton within a reasonable time. There is nothing in the pleading from which it could be legally in-

ferred that the appellee understood the likelihood of probable delay or knew of the heavy congestion of traffic.

The railroad company could easily have escaped liability by merely notifying the shipper at the time the freight was tendered of the facts known only to itself in regard to its lack of cars and ability to handle the crop, or even the shipper's cotton, at the time, and thus have placed the shipper in position to make other arrangements for its transportation or determine for himself whether to place the cotton with the carrier for transportation at the time.

Even though appellee had all the knowledge alleged in the pleading, yet there was no obligation on him to make further inquiry. The obligation was upon the carrier on receiving the cotton to notify the shipper of its lack of facilities, no matter how enormous the cotton traffic might be; and this it did not do. Even if the appellee had made further inquires the only information obtainable would have been such as the defendant alone could have given him. No outsider could give such information. And the carrier was obligated to give full information without awaiting appellee's inquiries.

As the decision announced by Justice TRULY in the *Blum Company case, supra,* covers this case, we see no need of citing any other authority to uphold our views. Counsel for appellant admit that the decision in that case is correct, and the only difference between that case and this one is in the allegation here that plaintiff knew at the time he tendered the cotton to appellant for shipment, that, on account of the heavy traffic and large demand for cars, the cotton could not be transported with the usual rapidity.

Argued orally by *C. N. Burch,* for appellant.

MAYES, J., delivered the opinion of the court.

Blum sued the Yazoo & Mississippi Valley Railroad Company for unreasonable delay in the shipment of certain cotton

delivered to the company to be transported from certain stations along its line to Greenville. To the declaration the railroad company pleaded the general issue, and filed a notice with same in which it offered to show that the delay in this shipment was caused, not by reason of any lack of equipment to handle its ordinary traffic at all seasons of the year, but because there was an excessive crop, greater than all estimates made by either the railroad or experts most familiar with crop conditions for that year; that from an estimated crop of a little over eleven million bales, the crop in reality was something over thirteen million bales, and the company did not, and could not, foresee or anticipate any such record-breaking crop, and, if it had been able to do so, it would not have been able to provide necessary equipment to move this enormous crop of cotton with greater promptness than it was handled by the defendant at that time; that it exhausted all means to procure additional equipment, and provided a greater number of cars for the movement of this crop than it had provided in any previous year, but, notwithstanding this fact, on account of the unusually heavy crop and the great demands made upon it along this part of its line and elsewhere, it was unable to handle and move the cotton tendered by appellee with greater dispatch than it did; that in order to handle this cotton it took unusual and extraordinary steps to handle it promptly, and transport it to market, and rush back cars when emptied without waiting for them to be re-loaded, so that the number of empty cars handled by it for the months of the shipping season exceeded the number of empty cars handled by it for the same months in any previous year; and that appellee knew, at the time he offered the cotton for shipment, that a large amount of cotton was being offered to the defendant at the points from which appellee's cotton was shipped, and was informed that this was true all along the line, and knew that there was a great demand for cars, and that cotton was not being transported with the

rapidity with which it was usually transported. It further said, that to provide and retain an equipment of cars and labor to move the crop for 1904-05 being offered on its lines during the months of October, November and December, would have required it to purchase and keep an equipment amounting to more than one-third of any equipment required or needed to move the freight under ordinary conditions during any month of any season prior to the date cotton was shipped. The court declined to admit the proof offered in the special notice, and a verdict was returned in favor of Blum for the sum of $1,348, and the railroad company appealed.

It was error in the court to exclude the proof offered under notice filed with the general issue. If appellant had made the proof offered under this notice, it would have furnished a complete defense to this suit. In the case of *Y. & M. V. R. R. Co.* v. *Blum,* 88 Miss., 180 (s.c., 40 South. Rep., 748), the declaration alleged that the company, at the time, was only provided with such engines, cars and other equipment necessary for handling its freight as was sufficient for eight or nine months of the year, and that during the marketing season of three or four months the rush of business required more cars and equipment than was necessary for the proper handling of the ordinary business of the company, and the company had failed to provide the cars, and Blum did not know or was not informed of the conditions existing when he offered the cotton for shipment, and the court said: "The pleas admit that the delay in the handling and transportation of appellee's cotton, and the damages sustained, resulted from defendant's not being provided with sufficient equipment and facilities for the handling of this cotton with greater expedition than was used in handling it"—and further said: "It was also manifest, from the allegations of the special pleas, that appellant does not possess the engines, cars, and other equipment necessary for the handling of freight over its line, ample and sufficient for the

Opinion of the court.

transportation and dispatch of all business ordinarily offered at all times," and for this reason (that is to say, because of the failure of the company to furnish sufficient equipment and facilities for handling its shipment under ordinary conditions at all times, and because there was no notice to Blum) the court held that the company had not fulfilled its duty, and therefore was liable. But in this case the proof offered under the notice filed meets and overcomes the very point on which the court held in the case in 88 Miss., 180 (s.c., 40 South. Rep., 74), that the company should be liable. A railroad company, as common carrier, must furnish such facilities for transportation as will meet the ordinary demands of the public, but is not bound to anticipate or provide in advance for an unusual influx of freight. *Galena, etc., R. R. Co.* v. *Roe,* 68 Am. Dec., 574; *Ballentine* v. *N. Missouri R. R. Co.,* 93 Am. Dec., 315; *Thayer et al.* v. *Burchard,* 99 Mass., 521; *Helliwell et al.* v. *Grand Ry.* (C. C.), 7 Fed., 68; *Faulkner et al.* v. *Southern Pacific Ry.,* 51 Mo., 311; *Wilbert* v. *N. Y. & Erie Railway,* 19 Barb. (N. Y.), 36, 51.

*Reversed and remanded.*