MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS ET AL.
v. STARK GRAIN COMPANY.

No. 2083. Decided November 9, 1910.

1.—Carriers—Delay—Congested Traffic—Contract—Notice—Pleading.

In order to relieve a carrier from liability for damages by unusual delay of goods transported, by reason of congested conditions of traffic preventing prompt transmission, it is not necessary that he plead or prove an agreement by the shipper for transportation subject to such conditions. But it is necessary for the carrier to allege and show that he gave notice of the conditions to the shipper when the freight was offered and received. An answer that the conditions necessitating delay were notorious and known to the shipper, will not relieve the carrier from liability for ordinary promptness in transmission, though there was no agreement to transport within a certain time. (Pp. 544–546.)

2.—Carriers—Interstate Commerce—Connecting Lines.

By the laws of the United States a railway receiving goods for interstate transportation over its own and connecting lines is made liable for damages

by default or delay in the carriage of same by such connecting carriers. (Act of Congress of June 29, 1906, chap. 3951, sec. 7.) But an intermediate line, receiving and transporting the goods under such shipment with due care and promptness, is not liable for delay in the transportation by the first carrier. (P. 546.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Collin County.

The Stark Grain Company had judgment against the Missouri, K. & T. Ry. Co. and the Missouri, K. & T. Ry. Co. of Texas, which was affirmed on appeal. Both appellants then obtained writ of error.

*Coke, Miller & Coke* and *Garnett & Hughston,* for plaintiffs in error.—Where the defendant railway company exhausted all the means within its power to procure the necessary equipment to move the freight, which was an unusual and unprecedented condition at the time, and was unable to move it quicker by any means within its power, it is not liable, and the court erred in sustaining the demurrer. International & G. N. R. Co. v. Lewis, 23 S. W., 323; Yazoo & M. V. Ry. Co. v. Blum, 42 So., 282.

*J. R. Gough* and *Abernathy & Abernathy,* for defendant in error. —A rush of business or heavy and unprecedented traffic does not relieve the carrier from liability for breach of a shipping contract or from reasonable care, diligence and dispatch. Gulf, C. & S. F. Ry. Co. v. Hume, 24 S. W., 915; International & G. N. Ry. Co. v. Anderson, 21 S. W., 691; Cross v. McFaden, 20 S. W., 846; Gulf, C. & S. F. Ry. Co. v. McCorquodale, 71 Texas, 41.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

The defendant in error (plaintiff below) sued the Missouri, Kansas & Texas Railway Company, the Missouri, Kansas & Texas Railway Company of Texas and the Houston and Texas Central Railway Company, to recover damages sustained by the plaintiff from delay in the transportation of certain cars of wheat delivered to the first-named company at St. Louis and shipped over the three roads, in the order named, to Plano, Texas. The last-named company was discharged by the judgment below and the two first-named are complaining in this court of the affirmance of a judgment against them by the Court of Civil Appeals.

One of the defenses set up by them was that the delay was caused by an unprecedented rush of business over their roads which no degree of care on their part could have anticipated and provided for, by which their capacity for transportation had been overtaxed. The answers showed that the condition existed when the wheat was received for transportation and failed to show that any contract was made with, or any notice given to, the shipper with reference to it. Each answer did allege that the condition "was generally known and all contracts made by this defendant with reference to the shipment of grain on the lines where such congested conditions existed were made in reference to said congested conditions and in contemplation thereof and with full notice thereof on the part of shippers

that said congested conditions existed, and that none of the said contracts of shipment were made in reference to or in contemplation of conditions of traffic during seasons when the movement was light."

Exceptions were sustained to these answers, which action was affirmed by the Court of Civil Appeals on the ground that the pleas did not "allege" any contract of exemption for delay on account of rush of business," and also. because no harm was done by the sustaining of the exceptions inasmuch as the evidence showed conclusively that there was no such exemption "stipulated for."

We did not agree entirely with this holding and for that reason granted the writ of error. The undertaking alleged by the plaintiff was not for delivery within any stipulated time but of the one ordinarily assumed by common carriers in receiving goods for transportation, to deliver "with diligence and dispatch and in due course of business," the breach of which was alleged to have consisted in the failure of the defendants to exercise due care and diligence in making such delivery, from which breach the delay was alleged to have resulted. To meet such a case as this, the defendants had the right to allege any state of facts which the law recognizes as an excuse for delay where the duty of the carrier is only that which the law in the absence of express contract imposes. The true question, therefore, was not, whether or not the defendants had secured exemption from liability for delay by express stipulation, but was, whether or not the facts alleged exculpated them from the charge of a breach of duty in failing to transport and deliver with reasonable diligence. Nor would the question be different if it arose on the evidence rather than on the pleading. The ordinary bill of lading, containing no agreement to deliver at or within any specified time and therefore imposing only the duty to carry and deliver within a reasonable time, would not be contradicted or varied by evidence showing the circumstances controlling the transportation and. delivery of the particular shipment to aid the inquiry whether or not, considering those circumstances, the delivery in question was made within such reasonable time, and the dependent question, whether or not the delay was negligent. But where a delay out of the ordinary course has occurred which the carrier seeks to excuse by showing the existence of unusual conditions, it assumes the affirmative and must by its pleading and evidence show every fact essential to the legal validity of its excuse; and the, pleadings of the defendants were insufficient in that they failed to allege that any of them, before receiving the wheat for transportation, notified the shipper of the condition, then existing and known to them, which was the cause of the delay. Such notice the authorities, with practical unanimity, hold to be essential to such a defense. It is different where the shipper attempts to make the carrier liable for refusing to accept goods for transportation. Such a defense of its refusal as that here attempted is allowed in such cases; and that it is, is the foundation of the other rule, that if the carrier accept, without notifying the shipper of existing conditions calculated to cause extraordinary delay, so that the latter may determine for him-

self whether or not he will take the risk, the carrier is responsible as in ordinary cases. This duty of the carrier is somewhat differently stated in the decisions, some mentioning only notice to the shipper, and others seeming to require an express contract throwing the risk on him, as requisite. The doctrine has been merely stated in general form in cases in which neither agreement not notice was shown in which it was unnecessary to determine whether or not the latter alone would have been sufficient, and this is true in this case. The view expressed by the Court of Civil Appeals would probably be correct if an express contract was necessary to relieve the carrier receiving goods from the consequences of delay due to such a condition as that alleged, for if such were the rule, this express agreement probably could not be added by parol to that expressed in an ordinary bill of lading. Hence we think it proper to say that we do not think such an express agreement is necessary. We regard the rule denying to carriers the right to excuse themselves for delays resulting from such conditions as those supposed, when they have received the property knowing of the existence of those conditions and giving no notice thereof to shippers, as defining a part of the duties imposed by law upon carriers and not as expressing merely the results of agreements. That duty is to give notice to customers whenever the transportation can not be performed in the usual way, which notice gives to the shipper the opportunity to choose between different courses open to him. When the carrier has done this it has fulfilled its legal duty in this respect and should not be held responsible for a delay which it can not prevent if the shipper still insists on delivering his property for shipment. The following authorities discuss the questions: International & G. N. R. R. Co. v. Anderson, 3 Texas Civ. App., 8; Texas & N. O. R. R. Co. v. Kolp, 88 S. W., 417; Great Western Ry. Co. v. Burns, 60 Ill., 284; Guinn v. Wabash Ry. Co., 20 Mo. App., 453; Faulkner v. South. Pac. Railroad, 51 Mo., 311; Illinois C. R. R. Co. v. Cobb, 64 Ill., 139; Bussey v. Memphis Ry. Co., 13 Fed., 330; Yazoo & M. V. Ry. Co. v. Blum, 42 So., 202; Mich. Cent. R. Co. v. Mineral Springs Mfg. Co., 16 Wall., 326; Hutchinson on Carriers, sec. 496; Moore on Carriers, p. 252, sec. 10; 6 Cyc., 444-5.

Hence we hold that a failure of the carrier to allege an agreement of exemption with the shipper when it alleges notice to him does not necessarily make a pleading bad. We may concede that the answers show a condition of things which, by proper notice to the shipper, might have been made available by the receiving carrier as an excuse for delay in the transportation, but no such notice is alleged. On the contrary the answers seem purposely to avoid making such allegation, seeking instead to charge the plaintiff with knowledge possessed by the public generally. This will not do. If it should be assumed that plaintiff had the knowledge of the prevailing condition which people generally are alleged to have had, he could not be required to do for the carrier what it did not do for itself. He could not be expected to know the exigencies of its situation or its capacity at any particular time to perform in the

ordinary way the undertaking to carry the property about which it raised no question. The notice which the law requires ·is one to be given to shippers ·when freight is tendered and this for the reason that the carrier is the one to know its own situation and to give warning to protect both from loss to result from that situation.

The attempt to allege that all contracts were made with reference to the existing condition is futile. The question was with reference to the particular shipments, and it is not alleged that there was any contract with plaintiff different from that averred by him. The exceptions were properly sustained. It is proper to add that if it were necessary to determine the liability of the Missouri, Kansas & Texas Railway Company of Texas under the principles already discussed, it might be necessary to consider the effect· of our statutes regulating· the reciprocal duties of connecting carriers in respect to their duties to receive cars, etc., from each other, but as it will be adjudged that no delay was shown on the road of that company further discussion with reference to it is unnecessary. The statute of this State prescribing the duty of railroads to take and transport property, (arts. 4494-4496, Rev. Stats.), would also enter into the determination of such questions as we have discussed if they arose on property tendered in this State. Houston & T. C. R. R. Co. v. Smith, 63 Texas, 322; Wibert v. New York & E. R. Co., 2 Ker. (12 N. Y.), 245. But that statute, if prescribing rules which would alter the general principles discussed, which we do not intimate, would not control this case, the property having been tendered in another state.

The trial judge by his charge made both plaintiffs in error liable for all damages for delay whether occurring on one road or the other. There was no allegation or proof of partnership or other joint interest or action between the two companies. They were merely joined in the usual way as connecting carriers. We can discover no reason, and no good one is suggested, for holding the Missouri, Kansas & Texas Railway Company of Texas responsible for the fault of the receiving carrier, and as there is no evidence of delay on the line. of the first named, the judgment against it will be reversed and judgment entered discharging it. With the Missouri, Kansas & Texas Railway Company the case is different. As the carrier which received the goods in Missouri for through transportation, it is made liable by the Act of Congress of June 29, 1906, C. 3951, sec. 7, for the entire loss. The judgment against it will therefore be affirmed.

Other assignments of error require no further notice.

*Affirmed as to Missouri, Kansas . & Texas Railway Company; Reversed and Rendered as to Missouri, Kansas & Texas Railway Company ·of Texas.*