No. 18,186.

WILLIAM WALKER *v.* VERN N. NELSON.
(327 P. [2d] 285)

Decided June 30, 1958.

Mr. WILKIE HAM, for plaintiff in error.

Messrs. GAUNT & BYRNE, Mr. LYSLE R. DIRRIM, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THE parties appear here in reverse order to their appearance in the trial court. We will refer to them by name.

Nelson filed his complaint in the County Court of Adams County against William Walker and one Law-

rence Halbleib, defendants, alleging that they had contracted to pasture cattle upon plaintiff's lands at the agreed price of $2.00 per head per month. Nelson alleged the sum of $553.21 as due him. Walker filed his answer denying the contract and debt. Halbleib filed no answer but entered his appearance at the trial. Trial was to the court which found for plaintiff against both defendants. Defendant Walker appealed to the district court where trial was again to the court resulting in the same judgment against him. Motion for new trial was dispensed with and Walker is here on writ of error.

The question to be determined is whether under the record before us an owner of cattle is liable to a land owner for pasturage of his cattle when he has made a separate contract with, and full payment to, an agister? No question of lien is involved in the action.

The record discloses irreconcilable conflicts in the testimony as to many matters; however, there is no material discrepancy in the record as to the following facts; to-wit:

Halbleib approached Nelson's agent, one Causey, while Nelson was away and was given consent to pasture cattle on Nelson's land. Halbleib placed cattle belonging to various people other than Walker on the land, collected from the livestock owners and paid Nelson. Later Nelson told Halbleib he had other land several miles away that he wanted to rent for pasture and asked him to try to find some cattle to place thereon, the agreement being that Halbleib would pay Nelson $3.00 per month rental for a cow and $1.50 for each calf under 400 pounds. The end result was that Halbleib arranged with Walker, who did not know Nelson, to send 231 calves from near Lamar, Colorado, to Adams County for pasturage. Walker paid Halbleib $800.00 for this pasturage; Halbleib looked after the cattle of the various owners, including Walker's, and Nelson was not paid in full for this transaction. There is a conflict as to whether Nelson was paid anything on account by Halbleib for

Walker's cattle — all of which is immaterial. On no other contract did Nelson look to the cattle owner for payment.

The record discloses that *after* Nelson and Halbleib had .agreed upon their contract, and while some of Walker's cattle were being transported to the land in question, one of the transport trucks turned over near Hugo. Walker was notified of this and proceeded by automobile to check on his cattle. He arrived at Nelson's pasture just before the last two truck loads of cattle. Shortly thereafter Mr. and Mrs. Nelson drove up. They introduced themselves and sat in Walker's car while the cattle were being unloaded. During this time Nelson asked Walker what he thought was the value of pasturage. Nelson testified that he told Walker he was getting $3.00 per month per head on other lands. Walker remarked that his deal was with Halbleib and that a $3.00 charge would be for cows and that $2.00 per head was more than sufficient for calves.

Nelson also testified that when it was time to remove the cattle he called Walker and told him to pay the rental before he moved his calves. Walker testified that this call was after the cattle had been removed and that Nelson only said that Halbleib had not paid him yet and that Nelson asked Walker to contact Halbleib and ask him to pay Nelson. In any event Walkers' final payment to Halbleib, even if Nelson's testimony on this point is correct, is not inconsistent with the contract between Nelson and Halbleib for it was Halbleib who was to pay Nelson. The evidence is that Walker paid Halbleib $400.00 on account after the cattle had been pastured for two weeks and paid the balance of the $800.00 total at the time the cattle were removed.

Nelson's theory, which the trial court apparently adopted, is that because he asked Walker what he thought about pasture rentals *after* the contract for pasturage had been argreed to between Walker and Halbleib that Walker thereby contracted .with Nelson to

pay the rent. This is an erroneous view of the contractural rights of the parties.

The relationship of Halbleib to Walker was that of agister; viz, he was a person engaged in the business of pasturing of cattle as a bailee in consideration of an agreed price to be paid by the owner of the cattle. The evidence discloses that Nelson had asked Halbleib to find cattle to put on his land on a basis similar to other transactions between them. Contracts of agistment are distinguishable from leases, 3 C.J.S. 1107, §15, and Nelson clearly did not lease land to Walker. At no time was there a contract between Nelson and Walker. The contract had already been made and it existed between Nelson and Halbleib on the one hand as to the terms upon which Nelson would lease the pasture to *Halbleib*, and between Halbleib and Walker on the other hand, as to what Walker would pay Halbleib for taking his cattle as agister and pasturing and caring for them — all this before the cattle were shipped.

An agister is liable to third parties for injuries inflicted by animals in his custody and attributable to his negligence, 3 C.J.S. 1115, §18, and he is an independent contractor fully able to enter into his own separate contracts for pasture to be used in his work. Here plaintiff's Exhibit 1, his business record book, shows the caption of "Lawrence Halbleib, Holly, Colo." Below that appears "Walker — owner La Mar, Colo." Obviously from that heading Nelson did not consider that his contract was with Walker. There is no basis in law or equity to support a proposition that because Nelson's contractor, to whom he had leased his land for pasturage, failed to pay him, as they may have agreed, that Walker, who performed his agreement in full, should pay twice. Halbleib was the party with whom Walker had contracted for pasturage and to whom he was obligated for the pasturage fees.

While the general rule is that findings and judgment based upon conflicting evidence, if amply sup-

ported, will not be disturbed on review, *Yockey v. Graves,* 131 Colo. 291, 281 P. (2d) 1004, the conflicting evidence upon which Nelson relies to sustain the judgment against Walker relates to matters not pertinent to the determinative issue and the findings of the trial court thereon are immaterial. The evidence does not sustain the finding and judgment of the trial court upon the material question.

The judgment is reversed and the cause remanded with directions to dismiss the complaint as to defendant Walker.